Billy Jack STOWE, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–77–535.

Court of Criminal Appeals of Oklahoma.

Jan. 17, 1979.

As Corrected Jan. 30, 1979.

John T. Elliott, Public Defender, Robert A. Ravitz, Asst. Public Defender, Oklahoma County, for appellant.

Larry Derryberry, Atty. Gen., Ross N. Lillard, III, Asst. Atty. Gen., for appellee.

OPINION

BUSSEY, Judge:

Appellant, Billy Jack Stowe, hereinafter referred to as defendant, was charged, tried and convicted in the District Court, Oklahoma County, Case No. CRF–76–3885, for the offense of Assault and Battery with a Deadly Weapon with Intent to Kill, After Former Conviction of a Felony, in violation of 21 O.S.1971, § 652. His punishment was fixed at a term of seventy-five (75) years' imprisonment. From said judgment and sentence a timely appeal has been perfected to this Court.

At the trial, Officer Jerry Lynn King testified that on the evening of October 17, 1976, he was on routine patrol in the northeastern section of Oklahoma City. As he approached the intersection of 23rd Street and Eastern Avenue he observed a white male standing in the parking lot of the Fox Box night club. He considered this unusual in that he had seldom observed white persons at the Fox Box. He parked his car and approached the subject to see if he needed assistance. He told the individual, whom he identified in court as the defendant, that he wanted to pat him down and that he wanted to see some identification. Defendant broke and ran stating "no I don't have any identification no way." [TR. 26]. The officer started running after the defendant. He chased the defendant through the parking lot of the night club and observed another white male sitting in a red and black Ford pickup. Defendant ran into the front yard of a nursing home, turned and fired a weapon at the officer. King drew his pistol and fired two shots at the defendant. The defendant fell to the ground. The officer identified State's Exhibit No. 2 as a .38 caliber two-shot derringer that he recovered near the defendant. He testified that the bullet fired by the defendant went through his trousers without striking him.

Lilly May Campbell testified that on October 17, 1976, at approximately 8:00 p. m., she was working as a nurse at the Terrace Garden Nursing Home on northeast 21st street in Oklahoma City. She heard what sounded like three shots. She went to the window and observed a police officer raise up behind a car. The officer ran to the

window and asked her to call the police and an ambulance.

The defendant testified that on the evening in question he went to the Fox Box parking lot to help Steve Balthrot, who was having trouble with his pickup. Officer King pulled into the parking lot and asked if they were having car trouble. He asked the defendant if he had an I.D. He handed his billfold to the officer. The officer looked at his driver's license and told him to put his hands on the car. He broke and ran from the officer because he thought he had been "set up," by a "snitch." He admitted pulling a gun from his rear pocket during the chase so he could throw it away. He denied firing the gun at the officer.

In rebuttal, Harold Caldwell testified that on October 17, 1976, at approximately 6:30 p. m. a red and black pickup drove into his driveway. A short time later he observed the pickup at Mike Butcher's house. He knew that Butcher was not at home and he proceeded toward his house. He observed two people come out of the house and get into the pickup. The pickup came down the driveway toward him and someone started shooting at him. Caldwell stated that he chased after the pickup but that he was unable to catch it.

James Butcher testified that he lived one-fourth of a mile east of Choctaw Road in the Jones area and that on the evening of October 17, 1976 he was out of town. He returned sometime after 9:00 p. m. and discovered that his house had been burglarized. He identified state's exhibit # 5, a twenty-two caliber revolver as having been taken from his home in the burglary.

Steve Balthrot, defendant's brother-in-law, was granted immunity from prosecution at the request of the prosecuting attorney. He testified that on October 17, 1976, he was in the Jones area with the defendant, looking for a house to burglarize. They were in a red and black pickup and had two other associates in a tan pickup. Defendant went into a house and came back to the pickup carrying a twenty-two caliber pistol. A car came into the driveway and defendant fired three or four shots

at it. They drove back to Oklahoma City and parked behind a night club. Defendant told him to get the things out of the truck and that he would go call someone to come get them. A police car drove up and shortly thereafter he observed an officer chasing the defendant.

■ For his first assignment of error, the defendant alleges that the trial court erred in denying his request to dismiss counsel and represent himself, citing as authority *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), and *Johnson v. State*, Okl.Cr., 556 P.2d 1285 (1976). In *Johnson,* supra, this Court stated:

"All that is required for an effective election for self-representation is that the defendant have full knowledge or adequate warning concerning this right and a clear intent to exercise it."

We thus must examine the record to ascertain if the defendant did in fact make a knowledgable and unequivocal election to represent himself. The record reflects that prior to the selection of the jury, the defendant, in an angry outburst, stated, "I am in no case prepared for court, I never talked to him about what took place out there. As far as I'm concerned he has nothing more to do with my case. I would rather defend myself." The trial court inquired of the defendant his reasons for wishing to discharge counsel and was informed that he had not had an adequate opportunity to discuss the case with the attorney and that he had not subpoenaed any witnesses. The retained counsel informed the trial court that he had visited with the defendant on numerous occasions and that the defendant had failed to provide him the names of any witnesses. The trial court, apparently concluding that the problem could be resolved without much difficulty, granted a continuance until the following morning, specifically to give the defendant an opportunity to further discuss the case with the attorney. The record is devoid of any protest or objection interposed by the defendant to the trial court's action. The following morning the case was reconvened and the defendant did not object to being represented by the re-

tained counsel. A jury was selected and the evidence presented without defendant demanding to represent himself.

Based on the foregoing we are of the opinion that the defendant failed to unequivocally express an intent to represent himself. Therefore we find this assignment of error to be without merit.

■ The defendant contends in his second assignment of error that the trial court abused its discretion by denying his motion for a continuance. Although defendant's counsel set forth three grounds in his motion for continuance he candidly informed the trial court that he was not serious as to the motion when he stated:

"My basic opinion is that what I have right now, I would probably be just as ready for trial as I would a month from now without any additional witnesses."

Considering that the trial court continued the case until the following morning to enable counsel to locate the additional witnesses, we cannot find that the trial court abused its discretion in denying a further continuance. See *Kirk v. State*, Okl.Cr., 555 P.2d 85 (1976) and *Brown v. State*, Okl.Cr., 456 P.2d 604 (1969).

■ Defendant alleges in his third assignment of error that he was denied effective assistance of counsel because of his incompatibility with his defense counsel. We are of the opinion that this assignment of error is patently frivolous. The record reflects that defendant's trial counsel vigorously cross-examined the State's witnesses, made proper objections, presented defendant's theory of defense and made a cogent statement to the jury. Defendant's trial was not a farce, mockery or sham due primarily to the efforts of the trial court and defense counsel. See *Jones v. State*, Okl. Cr., 513 P.2d 1402 (1973). The defendant was afforded effective counsel and received a fair trial.

■ Defendant urges in his fourth assignment of error that the trial court erred in admitting testimony relating to other crimes during rebuttal. Defendant argues that the State's rebuttal testimony concerning the burglary and the shooting at Harold Caldwell was improperly admitted. We agree. The exception to the general rule excluding evidence of other offenses was set forth by this Court in *Moulton v. State*, Okl.Cr., 476 P.2d 366 (1970), where we stated:

"The general rule in this state is that when a defendant is put upon trial for one offense he is to be convicted, if at all, by evidence which shows that he is guilty of that offense alone and the admission of evidence of other crimes, either prior or subsequent to the offense for which he is on trial is inadmissible. However, evidence of separate and similar offenses is admissible when it is material and proper to show (1) motive, (2) intent, (3) absence of mistake or accident, (4) identity of person charged with the commission of the crime for which an accused is put on trial, and (5) common scheme or plan embracing the two or more crimes so related to each other that proof of one tends to establish the other."

■ The five exceptions in the foregoing rule are not without limit. Once the trial court determines that the evidence of other crimes fits into an exception of the general rule the admissibility of such evidence is still conditioned on a finding that the probative value of the evidence out weighs prejudice to the accused.

In the present case the prejudicial effect of the evidence greatly outweighed the probative value and accordingly we find that its admission constituted prejudicial error.

■ Defendant asserts in his fifth and sixth assignments of error that the trial court erred in commenting on the weight and credibility of the evidence. The remarks of which defendant complains are as follows:

"THE COURT: No. We are not talking about witnesses now. We are talking about any explanation you want to make to the jury about your gun discharging. Now, if you don't remember about it, of course, you couldn't. But I'm going to give you an opportunity to tell the jury whatever you want to about it. You say

you didn't shoot at him. The evidence is that the gun in your hands did discharge. Now, it may be that you have some explanation of that and the jury is ready to hear if you have any." [Tr 89].

The next portion of the record to which the defendant objects is as follows:

"THE COURT: Now, we had a hearing yesterday, didn't we?

"A. Yeah. We did.

"THE COURT: The jury wasn't here?

"A. That's right.

"THE COURT: And we went into a lot of things and you said at that time you wanted to take the stand and testify?

"A. Yes, sir. I do.

"THE COURT: I told you at that time a lot of those things would be immaterial and inadmissible but that if you wanted to testify to them, the Court would let you do it. Is that correct?

"A. Yes, sir.

"THE COURT: Is that what you want to do?

"A. Yes, sir.

"THE COURT: All right." [Tr. 74].

The defendant failed to object on either occasion to the trial court's remarks, thus failing to preserve any alleged errors for review on appeal. See *Turman v. State,* Okl.Cr., 522 P.2d 247 (1974) and *England v. State,* Okl.Cr., 560 P.2d 216 (1977).

Defendant finally contends that the punishment is excessive. We have consistently held that the question of excessiveness of punishment must be determined by a study of all the facts and circumstances in each particular case and that this Court does not have the power to modify a sentence unless we can conscientiously say that under the facts and circumstances it is so excessive as to shock the conscience of this Court. See *Roberts v. State,* Okl.Cr., 473 P.2d 264 (1970).

Insofar as we agree with the defendant's contention raised in the fourth assignment of error we are of the opinion that the sentence should be modified from a term of seventy-five (75) years to a term of thirty-

five years and as so MODIFIED, the judgment and sentence is AFFIRMED.

CORNISH, P. J., and BRETT, J., concur.