**STATE of Missouri, Respondent,**

v.

**Elmer Richard HAYES, Appellant.**

**No. 62377.**

Supreme Court of Missouri,
Division One.

Nov. 10, 1981.
Rehearing Denied Dec. 8, 1981.

Thomas Patrick Deaton, Jr., St. Louis, for appellant.

John Landwehr, Asst. Atty. Gen., Jefferson City, for respondent.

ROBERT R. WELBORN, Senior Judge.

Appeal from conviction upon jury verdict of guilt for robbery, first degree, § 569.020, RSMo 1978, assault, first degree, § 565.050, RSMo 1978, and kidnapping, § 565.110, RSMo 1978, with life sentences for robbery and assault and 30 years' imprisonment for kidnapping.

The state's uncontradicted evidence, including the appellant's admissions, established the facts of the offenses as follows:

At around 3:00 P.M., on June 20, 1979, the appellant, Elmer Richard Hayes, entered the office of the Northwestern Savings and Loan Association in Florissant, Missouri, exhibited a gun to a teller and demanded money. The teller handed him some $1,600 and Hayes left. A workman at an adjacent restaurant noted Hayes' departure and gave police a description of the vehicle Hayes was driving.

Detective Sergeant Jay Noser of the Florissant Police Department responded to the police call of the holdup. En route to the scene in an unmarked police car, he heard a police broadcast describing the robber's car and the direction of its travel. Sergeant Noser proceeded in that direction and in the vicinity of the intersection of Routes 67 and 367 in North St. Louis County he saw a car which fitted the description of the robber's auto. Sergeant Noser pulled in behind the car, turned on his red signal lights and the vehicle pulled to the right of the roadway.

Noser stopped behind the vehicle and called his dispatcher to tell him that he had stopped the vehicle. While he was doing so, Hayes got out of the stopped vehicle and started firing a pistol at the officer. Shots fired through the windshield struck the officer. Hayes then went to the driver's side of the police car and fired several shots point blank at the officer. Noser was struck by eight bullets, but he survived the attack. He fired his weapon at Hayes' vehicle as it left the scene.

Shortly thereafter, Hayes drove his vehicle into an open garage at the Roeder residence in North St. Louis County. He came to the house and produced a weapon on the three occupants who had come to the front porch, 15-year-old Paul Roeder, his 17-year-

old sister, Regina, and 83-year-old Frank Schloemer, the Roeder's gardener. Hayes told the trio that he had just robbed a bank and killed a policeman, but that, if they would just be quiet, everything would be all right. After Hayes shaved off his mustache and changed his shirt for one of the Roeder's, he and Regina at his direction tied up Paul and Schloemer. Hayes and Regina then, on Hayes' order, left with Regina driving the Roeder's family car and Hayes in the front passenger seat holding a gun covered with a road map.

Hayes told Regina to drive to the country. She drove west on Route I-70 in St. Charles County. Paul and Schloemer freed themselves and called police. A highway patrolman who heard a broadcast description of the Roeder auto spotted it and started in pursuit. Hayes was aware of the following patrol vehicle. He suggested that Regina pull off the highway at the Lake St. Louis Exit. She did so, but the exit roadway was blocked by a police car. The patrol car followed the Roeder vehicle and, with police cars at the front and rear, Regina stopped the car and Hayes surrendered to the officers without resistance.

He was taken to the St. Charles County jail. When FBI men there identified themselves to Hayes and told him they wanted to question him, Hayes responded: "What do you want to know? I robbed the bank. I shot that police officer." After being given *Miranda* warnings, Hayes made a detailed statement, admitting the occurrences. He later made a tape-recorded statement which was used in evidence at his trial.

A jury found appellant guilty of robbery in the first degree, first degree assault and kidnapping. The jury assessed a punishment of life imprisonment for each of the first two offenses and 15 years' imprisonment for the third. The trial court found the appellant a dangerous offender, based upon two prior convictions for murder second degree. The sentence of the trial court was to consecutive life terms for the robbery and assault and an extended term of 30 years for kidnapping, also consecutive, the three sentences to run consecutively to

a 50-year sentence previously imposed upon appellant. This appeal followed.

In this Court, appellant's first claim of error is based upon the trial court's overruling of his motion for a change of venue because the inordinate amount of publicity which the cause had received so prejudiced the inhabitants of St. Louis County and surrounding geographic areas that he did not receive a fair and impartial trial.

Appellant's motion for change of venue was taken up on April 7, 1980. At that time, appellant's counsel introduced fourteen exhibits, consisting of articles from St. Louis newspapers regarding the events of June 20, 1979, and transcripts of television accounts of the incident. Appellant points out that the newspaper article appearing on the front page of the St. Louis Globe Democrat for June 21, 1979, bore the headline: "Escaped killer held in shooting of officer, abduction"; that other newspaper articles of June 22, 1979, recounted that appellant had admitted the offenses of which he was accused; that other newspaper articles detailed the progress of Sergeant Noser; and that exposure was given the incident by television and radio stations. The most recent news articles included among the exhibits offered by appellant were dated November 13, 15 and 16, 1979. All dealt with the giving of awards for valor to St. Louis County policemen. Sergeant Noser's name and picture appear along with those of several other officers so recognized. Brief reference to the incident giving rise to the award to Noser appears. Appellant's name is not mentioned.

When appellant's motion was heard, appellant's counsel told the court that no objection would be made to the court's "impaneling a jury right now and trying to get 12 people * * *." The suggestion was not pursued and appellant requested nothing further by way of a hearing on the motion. The motion was overruled.

When the case came on for trial on April 21, 1980, the prospective jurors were examined at length concerning their familiarity with the event. Each panelist who indicated in response to general questioning

some familiarity with the occurrence was questioned individually by the court and counsel, out of the hearing of the remainder of the panel. Six panelists were stricken for cause on the basis of their responses to such examination. Some 18 other members of the panel acknowledged recalling reading or hearing of the incident, but they did not recall appellant by name, recalled only the sketchiest details of the event and had formed no opinion regarding appellant's guilt. Defense counsel's motion to strike these 18 persons for cause was overruled, as was the renewed motion for change of venue, based upon the product of the voir dire examination.

█ As the movant in the application for change of venue, appellant had the burden (under the law then in effect; see Rule 32.04, effective January 1, 1982) of proving the allegations of his motion "* * * to the satisfaction of the court, by legal and competent evidence * * *." § 545.490, RSMo 1978. Appellant elected to stand upon the unsupported conclusory allegation of his motion and the media attention given the episode. Upon such record, no abuse of discretion on the part of the trial court in denying the motion has been demonstrated. Insofar as the exhibits relied upon by appellant showed, the publicity given the occurrence was largely contemporaneous with it. There was no protracted repetitious recital of the details. The most recent articles adduced by appellant had appeared some five months before the hearing. They contained only slight reference to the occurrence and did not refer to appellant by name. Such publicity, standing alone, did not compel the trial court to conclude that appellant could not receive a fair trial in St. Louis County and provides no basis for this Court's finding of an abuse of discretion on the part of the trial court. *State v. Parcel*, 546 S.W.2d 571, 574–575[11] (Mo.App.1977).

Appellant would distinguish this case from other cases in which no abuse of discretion in denying a motion for change of venue was found on the basis that in such cases, e. g., *State v. Zinn*, 562 S.W.2d 784, 787[2] (Mo.App.1978), and *State v. Singh*,

586 S.W.2d 410, 419[18] (Mo.App.1979), there was a pretrial hearing in which testimony of witnesses was heard, with the prosecution offering evidence in rebuttal of that offered on behalf of the defendant. In this case, defense counsel selected the method of proof of the defendant's claim of prejudice of the inhabitants. The suggestion at the hearing that the court then undertake selection of a jury was neither a request for hearing nor an offer of proof which should be taken into consideration in passing upon the trial court's action. The question is whether or not, upon the evidence presented, the trial court abused its discretion and none has been shown here.

█ Appellant also relies upon the result of the voir dire examination of jurors as supporting his right to a change of venue. The voir dire examination produced no problem in the selection of an unbiased jury for appellant's trial. A number of persons who had heard of the occurrence were found qualified to serve as jurors. The trial court could properly find that this prior knowledge was not cause for striking them when such knowledge did not preclude their reaching a verdict based upon the evidence at the trial. See *State v. Odom*, 369 S.W.2d 173 (Mo. banc 1963); *United States v. Brown*, 540 F.2d 364, 377–378[26–29] (8th Cir. 1976). The fact that six of the 60 prospective jurors examined had formed such an opinion of appellant's guilt disqualified them to serve as jurors is not demonstrative of a prejudicial atmosphere in St. Louis County which precluded appellant's receiving a fair trial there.

Appellant's second point on appeal is that the trial court erred in failing to declare a mistrial during the prosecuting attorney's closing argument because the prosecutor made inflammatory and prejudicial remarks outside the evidence about appellant. Appellant contends that the over-all effect of the prosecutor's remarks was to deny his right to a fair trial in violation of federal and state constitutional guaranties.

█ The objected to remarks, insofar as the trial court's acting on them is concerned, fall into three categories: 1. No

objection and *no action by trial court.* 2. Objection sustained and no further relief requested. 3. Objection overruled. Only the third category would afford any right to relief under the general rules of appellate review which require objection and proper request for relief as a predicate to appellate review of matters arising from closing argument of counsel. *State v. Martin,* 484 S.W.2d 179, 180[1, 2] (Mo.1972); *State v. Bibee,* 496 S.W.2d 305, 311–312[4–6] (Mo.App.1973).

■ In the third category, the first complaint of appellant is to the trial court's overruling of objections to the prosecutor's characterization of appellant as a "liar", "bum" and "potential cop killer." (Appellant's brief also includes earlier references to appellant as a "bad individual" and "a good example of [evil]," but objections were not made at the time of such remarks.) This complaint gets into the area of the sometimes fine distinction between the prohibited hurling of personal epithets by the prosecutor (*State v. Taylor,* 320 Mo. 417, 8 S.W.2d 29, 36–37[25–27] (1928)) and permissible comments and inferences supported by the evidence and amounting to a fair comment upon such evidence (*State v. Armstead,* 283 S.W.2d 577, 583[14–15] (Mo. 1955)). Here the trial court considered the remarks to be of the latter stripe. The fact that the appellant emptied his weapon into the officer at close range, inflicting injuries to the head, would seem to justify the inference that appellant was lying when he denied an intent to kill the officer. That evidence would also support the inference that defendant was a "potential cop killer." The characterization of the appellant as a "bum" may not have had similar evidentiary support, but that appellation can hardly have had any more effect than that of "young punk," found not prejudicial in *State v. Wallace,* 504 S.W.2d 67, 72[10] (Mo. 1973); see *State v. Poole,* 556 S.W.2d 493, 494–495[1–3] (Mo.App.1977).

■ The other argument to which appellant's objection was overruled dealt with the prosecutor's remark that appellant "would have killed to get out of that bank." The objection was that such argument was

"pure speculation" on the part of the prosecutor, but again the trial court considered it a comment on the evidence. The transcript on appeal does not include the closing argument of defense counsel, but the closing argument of the prosecutor does indicate that he was responding to defense argument which would have alleviated the seriousness of the robbery charge because *no* one was shot or injured in that incident. The prosecutor's response was in effect that appellant deserved no consideration for his inactivity which was due to the forced cooperation of the Savings and Loan employees. His subsequent encounter with Sergeant Noser justified the prosecutor's remark about *what might have occurred in the robbery.*

The prosecutor's arguments in these instances do not merit commendation but the trial court's rulings on them did not constitute error.

■ As for the other argument matters, the trial court either sustained objection and no further relief was requested or no objection was made at the trial. In such circumstances, *the assertion in the motion* for a new trial that the trial court should have declared a mistrial because of the cumulative effect of the prosecutor's argument was necessarily based on the plain error rule (Rule 29.12(b)) and relief required a demonstration of "manifest injustice or miscarriage of justice" because of the argument. As has been noted: "Ordinarily, alleged errors in closing argument do not justify relief under this standard unless they are determined to have a decisive effect on the jury." *State v. Murphy,* 592 S.W.2d 727, 732[9] (Mo. banc 1979).

■ The trial court is obviously in a much better position than is an appellate court in passing on the effect of oral argument. Control of argument and declaration *of a mistrial are both matters lodged* primarily in the discretion of the trial court. Here, in passing on the motion for new trial, the trial court must have concluded that the matters of argument objected to did not have a decisive effect on the jury. Such conclusion is readily understandable, given the overwhelming weight of the evi-

dence adduced by the state. *State v. Hurtt*, 509 S.W.2d 14, 15[2, 3] (Mo.1974). With the appellant having been apprehended in the carrying out of the kidnapping, his unquestioned identification by Sergeant Roeder, photographic evidence at the scene of the robbery and the appellant's admissions, a stronger case of guilt can hardly be imagined.

Obviously, arguments that police should have killed the defendant when he was apprehended and a dissertation on the prosecutor's view of the desirable application of the death penalty (to which objection was sustained) have no proper place in closing argument. However, in view of the weight of the state's case, this Court cannot say that the trial court's conclusion that such argument did not have a decisive effect on the jury was an abuse of discretion. *State v. Spears*, 505 S.W.2d 92 (Mo.1974).

Judgment affirmed.

MORGAN, P. J., BARDGETT and RENDLEN, JJ., and HOUSER, Senior Judge, concur.