STATE of Missouri,
Plaintiff-Respondent,

v.

Charles Edwin WILLIAMS,
Defendant-Appellant.

No. 14041.

Missouri Court of Appeals,
Southern District,
Division One.

Aug. 15, 1986.

Motion for Rehearing or to Transfer to
Supreme Court Denied Sept. 9, 1986.

Application to Transfer Denied
Oct. 14, 1986.

William L. Webster, Atty. Gen., John M. Morris, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Holy Simons, Columbia, for defendant-appellant.

GREENE, Presiding Judge.

On July 20, 1982, defendant, Charles Edwin Williams, was charged by indictment in Jasper County with the crime of capital

murder for killing Karen Hedges. After jury-trial, he was convicted of second degree murder and sentenced to life imprisonment. Our Supreme Court reversed the conviction on the grounds that evidence of "excited utterances" made by Williams within 15 seconds after the killing to the effect that "the gun was unloaded," and "I didn't mean to shoot her," had been improperly excluded by the trial court. *State v. Williams*, 673 S.W.2d 32 (Mo.banc 1984). The case was remanded for a new trial.

An information in lieu of indictment was filed on October 2, 1984, charging Williams with second degree murder for the killing of Ms. Hedges. This information was subsequently amended, on October 16, 1984, to allege that Williams was a prior and persistent offender by reason of two separate prior convictions for assault and robbery.

The case was jury-tried on October 18, 1984. The jury returned a verdict of guilty of manslaughter and, after a finding by the trial court that Williams was a prior and persistent offender, sentenced him to 15 years' imprisonment. This appeal followed.

On appeal, Williams does question the sufficiency of the evidence to sustain the verdict. As was said in *State v. Williams*, supra, 673 S.W.2d at 33, "this case presents a sordid tale of unrestrained and violent behavior." It suffices to say the evidence at trial shows that on the evening of July 16, 1982, Williams was informed that Karen Hedges, his former live-in girl friend, had gone out with another man. While Williams was searching for Karen, she and her date drove up in a pickup. Williams dragged Karen out of the truck, slapped her and "kicked her up the steps" of the mobile home where Karen was living. Once inside the trailer, Williams slapped Karen into unconsciousness, revived her by pouring iced tea on her face, and kicked her several more times. After warning Karen that, "If you want, I'll go get a gun and shoot us all," Williams went to his nearby mobile home, obtained a .22 caliber revolver, returned, and shot Karen in the head. She died from the wound.

Williams' first point relied on is that the trial court erred in refusing to quash the jury panel because the procedures used in Jasper County to select a jury panel were not in substantial compliance with the statutes governing jury selection in second class counties.

This identical contention was raised and rejected by this court in *State v. Stephens*, 699 S.W.2d 106, 107 (Mo.App.1985). That decision is controlling here. The point has no merit.

Williams next asserts that the trial court erred in denying him the right to proceed pro se at the trial level.

While a defendant in a criminal case has a constitutional right to self-representation, *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), such right is conditional. There must be a showing that the defendant is competent to make an intelligent waiver of counsel, *State v. Blackmon*, 664 S.W.2d 644, 648 (Mo.App.1984), and that his request to proceed pro se is unequivocal. *State v. Freeman*, 702 S.W.2d 869, 871 (Mo.App.1985).

■ Here, there was no conclusive evidence that Williams unequivocally stated his desire to represent himself. Instead, Williams stated that he would prefer, rather than accept representation from the public defender of Jasper County, to represent himself. Williams said he would accept the public defender of Cole County and that, "I have no specific attorney in mind other than outside of this county." The trial court denied the request for self-representation, whereupon Williams said, "Your Honor, I signed the waiver here about being self-represented." The court responded, "Yes, but then you went ahead and said there are parts of it that you don't want to waive and so I think that would be making error if I let you represent yourself under those circumstances." Under those facts, the court's refusal to let Williams represent himself was justifiable. An indigent defendant cannot specify who his attorney shall be. All he is entitled to is competent

counsel. *See Freeman,* supra, 702 S.W.2d at 871–73. The point has no merit.

In his third point relied on, Williams contends that the trial court erred in denying his motion for change of judge, which he contends he was entitled to as a matter of right under Rule 32.08(c).[1] Williams requested and was granted a change of judge prior to the first trial. After reversal of his conviction and remand to the circuit court, Williams requested another change of judge. This request was properly refused. A party is entitled to only one change of judge as a matter of right, regardless of how many times the case is tried. *State v. Sullivan,* 486 S.W.2d 474, 476 (Mo.1972). *See also* Rule 32.09(a). The point has no merit.

Williams next alleges the trial court erred in excluding certain testimony of Hans Ytell, the ambulance attendant who was called to the scene after Karen was shot. At trial, Williams' counsel made an offer of proof that Ytell would testify that when Williams handed him the gun, he said that he was trying to take the gun away from her when it accidentally discharged.

The record indicates that there was no telephone in the trailer where Karen was shot, and that it was necessary to go to another location to find a phone to call an ambulance. After the ambulance service received the call, it took another six or seven minutes for it to reach the crime scene. Williams told Ytell where Karen was lying. As Ytell was working with Karen, he inquired of Williams about the gun. Williams then got the gun and gave it to Ytell. A total of eight to ten minutes lapsed after Ytell arrived at the trailer before Williams told him that he had been trying to take the gun away from Karen when it discharged. Therefore, there was a time span of at least fifteen to twenty minutes between the time of the shooting and the statement in question.

Williams contends the testimony was admissible under the "excited utterance" exception to the hearsay rule. The exception applies when "the circumstances are such that the statements were made as a spontaneous reaction or utterance inspired by the excitement of the occasion and there was no opportunity for the declarant to deliberate and fabricate a false statement. *State v. Hook* 432 S.W.2d 349, 352 (Mo.1968). The time sequence of the events related above, while not controlling in and by itself, is a factor to be considered in determining the spontaneity of the statement in question. *State v. Gantt,* 644 S.W.2d 656, 659–660 (Mo.App.1982). The trial court believed Williams had plenty of time to fabricate the statement and, therefore, that the excited utterance exception did not apply. We conclude that, under the circumstances, such reasoning was not erroneous.

In his final point relied on, Williams argues that the trial court erred by admitting into evidence state's exhibit 7, a photograph taken during the autopsy, which showed a fresh hemorrhage in the deep muscle on the right side of Karen's back. Williams contends the exhibit had no probative value on any material issue and was unduly inflammatory.

Williams was charged with second degree murder. The state was required to prove, as an element of that charge, that Williams intended to kill Karen. The photograph supplied proof of that issue, as the pathologist who conducted the autopsy pointed out the hemorrhage area in the photograph, and said that it resulted from a hard blow. This was circumstantial evidence of Williams' state of mind immediately prior to the shooting. Photographs are admissible to prove any material element in a case, and a trial judge's decision that a photograph is admissible will not be disturbed absent a showing of an abuse of discretion. *State v. Davis,* 653 S.W.2d 167, 175 (Mo.banc 1983). No such showing is made here.

---

1. All references to rules are to Missouri Rules of Court, V.A.M.R.

Because Williams also filed a motion for a change of venue, these two motions were joined in a single application pursuant to the dictate in Rule 32.08(a).

The photograph, though admittedly not suitable for viewing by the queasy, shows the abdominal area of an individual, identified by the pathologist as Karen Hedges, that has been laid open by dissection to show a large hematoma in the back muscle area. Williams argues that because the photograph is gruesome and inflammatory that the prejudice ensuing from its admission overrides its probative value. We think not.

Under the evidence, the jury could have very well found Williams guilty of second degree murder. Considering Williams' past record, he could have received a life sentence for a conviction of that offense. By returning a manslaughter verdict, the jury indicated they had not been swayed by passion and prejudice resulting from the admission of the photograph, or anything else. The point has no merit.

Judgment affirmed.

FOREST W. HANNA, JOHN E. PARRISH, WILLIAM H. PINNELL, and TIMOTHY D. O'LEARY, Special Judges, concur.