**STATE of Missouri, Respondent,**

v.

**James WILLIAMS, Appellant.**

**James WILLIAMS, Appellant,**

v.

**STATE of Missouri, Respondent.**

**Nos. 55058, 60188.**

Missouri Court of Appeals,
Eastern District,
Division Three.

Feb. 18, 1992.

Motion for Rehearing and/or Transfer to
Supreme Court Denied
March 24, 1992.

Application to Transfer Denied
June 2, 1992.

Cheryl Rafert, St. Louis, for appellant.

William L. Webster, Atty. Gen., Millie Aulbur, Asst. Atty. Gen., Jefferson City, for respondent.

CRIST, Judge.

This is a consolidated appeal from convictions of murder in the first degree and attempted rape, and from the denial of Defendant's Rule 29.15 motion. Defendant was sentenced to life without parole on the murder count and one hundred years' imprisonment on the attempted rape count, to run consecutively to the life sentence. We affirm in part and reverse and remand in part.

Viewed in the light most favorable to the verdicts, the evidence adduced at trial was as follows. On July 27, 1986, Defendant rode to work with a co-worker and Victim, his supervisor at Malcolm Bliss Mental Hospital. Later, while on his morning break, Defendant drove with the same co-worker to East St. Louis, Illinois. There he purchased a twelve-pack of beer and one pint of gin. Defendant had borrowed five dollars from Victim to purchase the liquor.

At approximately 3:30 p.m., the workers supervised by Victim went down to her basement office to sign the time sheet. When the workers got to Victim's office, they found the door locked so they called hospital security. When the security personnel opened the door to Victim's office,

they found her body on the floor. She had numerous bruises about the arms and neck. Her shirt was pushed up around her neck, and her bra had been pushed up to reveal her breasts. Her underwear and hose were pulled down around her ankles.

An autopsy of Victim's body revealed that her death was the result of manual strangulation. Her body had sustained numerous bruises which were particularly noticeable in the neck area. In addition, Victim had sustained multiple tears in her vaginal lining which the medical examiner found to be consistent with forced penile penetration.

Several employees, including Defendant, were questioned about their knowledge of Victim's murder. Defendant initially claimed he knew nothing about the murder, but shortly thereafter he confessed to the police. In his confession, Defendant stated that he and Victim had argued about the change from the five dollars he borrowed to purchase liquor. He stated that as he began to leave her office, she jumped on his back; he hit her a few times and knocked her down to get her to be quiet. When she allegedly continued to scream and fight with Defendant, he began choking her. He said he stopped choking her at one point, but she screamed and spit at him, so he began to choke her again and eventually strangled her.

Defendant consented to the police's request to search his home. There, the officers found the clothing Defendant had worn to work that day. The clothing had bloodstains that were determined to be Victim's blood.

Although Defendant did not testify, he presented numerous witnesses on his behalf. At the conclusion of the trial, the jury found Defendant guilty of first-degree murder and attempted rape. Defendant filed a timely notice of appeal.

On May 2, 1989, Defendant filed a *pro se* Rule 29.15 motion. On August 1, 1989, Defendant's counsel filed an amended Rule 29.15 motion. On April 12, 1991, the motion court entered its Findings of Fact and Conclusions of Law and denied Defendant's motion without an evidentiary hearing.

Defendant initially contends the trial court erred in denying his motion to prohibit death qualification of the jury. Defendant contends a death-qualified jury panel violated his right to a jury drawn from a representative cross-section of the community in that it created a jury more conviction-prone than one not subject to such questioning. This issue has been raised and rejected numerous times by both the United States Supreme Court and the Missouri Supreme Court. *See Lockhart v. McCree*, 476 U.S. 162, 173, 106 S.Ct. 1758, 1764, 90 L.Ed.2d 137 (1986); *State v. Nave*, 694 S.W.2d 729, 735–736[6] (Mo. banc 1985), *cert. denied*, 475 U.S. 1098, 106 S.Ct. 1500, 89 L.Ed.2d 901 (1986). Further, this claim has specifically been rejected where the death penalty was not imposed, as in this case. *State v. Merritt*, 734 S.W.2d 926, 932[9] (Mo.App.1987).

Defendant next asserts the trial court erred in denying his motion to quash the jury panel on the grounds that the prosecutor had used his peremptory challenges in a racially discriminatory manner. The prosecutor exercised five of his nine peremptory challenges to exclude black venirepersons from the jury. The petit jury panel consisted of one black and eleven whites, with one black and one white alternate.

When Defendant objected to the prosecutor's strikes removing these venirepersons, the trial court stated it did not believe that Defendant had made a *prima facie* case of racial discrimination. However, the prosecutor requested a hearing to present his reasons for striking the black venirepersons. Defendant contends the prosecutor did not present racially neutral reasons for striking the prospective jurors.

■ A reviewing court may not reverse a trial court's decision as to whether the prosecution discriminated in the exercise of its peremptory challenges unless it finds that the decision was clearly erroneous. *State v. Griffin*, 756 S.W.2d 475, 482 [3, 4] (Mo. banc 1988), *cert. denied*, 490 U.S. 1113–14, 109 S.Ct. 3175, 104 L.Ed.2d 1036 (1988). The prosecutor's explanation as to why he struck the individuals Defen-

dant complains of was satisfactory. He stated he struck Venireperson Johnson because she claimed to have a hardship with her children one day but not the next, because she demonstrated little concern about a neighbor's rape, because she refused to make eye contact with the prosecutor and grimaced, and because she was Defendant's age and in the housekeeping profession, as was Defendant. He stated he struck Venireperson Barefield because his age was approximately that of Defendant, because he avoided eye contact, and because he was strong-willed and the prosecutor thought he could control the jury. The prosecutor indicated he struck Venireperson Schucks because he felt she would consider Defendant's intoxication as a mitigating factor in the penalty phase. He stated he struck Venireperson Fields because she became angry when requested to stand, and because she could not remember the charge involved in a case in which she was a juror but was "proud" that the verdict was "not guilty." He stated he struck Venireperson Brady because she was antagonistic towards him, and because she left a good-paying job for one with much lower pay. He stated he struck Venireperson Jones as an alternate juror because she seemed angry at the police for questioning her about the murder of her neighbor, and because her sister was in prison.

■ The trial court found that these peremptory strikes were not racially motivated. *See Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986); *State v. Antwine*, 743 S.W.2d 51 (Mo. banc 1987), *cert. denied*, 486 U.S. 1017, 108 S.Ct. 1755, 100 L.Ed.2d 217 (1988). This finding is substantiated by the record. The prosecutor's explanation for peremptory strikes is not required to rise to the level justifying the exercise of a challenge for cause. *Batson*, 476 U.S. at 97, 106 S.Ct. at 1723. The prosecutor may exercise his peremptory challenges on the basis of his legitimate "hunches" and past experience so long as racial discrimination is not the motive. *State v. Kilgore*, 771 S.W.2d 57, 63[10] (Mo. banc 1989), *cert. denied*, 493 U.S. 874, 110 S.Ct. 211, 107 L.Ed.2d 164 (1989). The trial

court's ruling was not clearly erroneous. Point denied.

■ In his third point on appeal, Defendant contends the trial court erred in sustaining the State's motion for sanctions because of Defendant's failure to provide the court with any notes concerning interviews with either prosecution or defense witnesses. These notes were to have been reviewed by the court to determine whether or not they constituted work product or were otherwise discoverable. Defendant cites no authority to support his position. However, in our discretion, we review Defendant's claim for plain error. *State v. Fraction*, 782 S.W.2d 764, 768[6] (Mo.App. 1989). The sustentation of the motion for sanctions was plain error only if a manifest injustice resulted therefrom.

No such manifest injustice occurred here. Defendant argues that he was forced to delete the endorsement of a potential defense witness for fear that disclosure could harm Defendant. However, nothing on the record indicates that Defendant was ever required to produce these notes for the State. The court never imposed sanctions on Defendant. Further, when at trial the State demanded Defendant's notes from the interviews of a defense witness, the court stated it was sure that Defendant had complied with the law. The court then denied the State's request to force Defendant to disclose those particular notes to the court. We find that Defendant was not prejudiced in any way, and that therefore no plain error occurred.

Defendant next asserts the trial court abused its discretion when it sustained the State's objection to Defendant's questioning of an expert witness regarding Defendant's possible mental impairment due to alcohol abuse. Defendant contends that if this testimony had been permitted, the outcome of the trial could have been different. Defendant's claim has no merit.

The expert witness whose testimony is at issue here was allowed to testify over the State's objection that alcohol abuse could cause brain damage. The expert continued his testimony in response to Defendant's redirect examination:

Q: If you find that there is brain damage or brain impairment and if you find a history of alcoholism or toxicity to the cells because of that, okay? Could damage be done to the cerebral cortex that would not appear in an MRI or CAT-scan?

A: Yes.

At this point, the State objected on the grounds that an insufficient foundation had been laid in that there had been no testimony concerning Defendant's toxicity, and no testimony about what amount of toxicity leads to cerebral cortex damage. The court sustained the State's objection. After further attempts by Defendant to establish a sufficient foundation, the court made the following comments:

... You have been able to establish toxicity and the causation between the alcohol and some kind of damage, but when you get to the specifics, there is a lack of underpinning to the term of the nature and extent of any damage based on the nature and extent of any ingestion of alcohol quantities, qualities, duration, et cetera.

You alluded to a period of about sixteen years in the lifetime apparently of this defendant, but there is not sufficient facts really for him to then zero in and say, 'Now, having that factual basis that this is the causation and result.' ...

I have tried to sufficiently explain my ruling, but I don't think this doctor is a medical doctor, and I don't think he possesses really the expertise to get into the area you're suggesting, and there is a total lack of foundation for him to draw any more conclusions.

■ It is within the trial court's sound discretion whether or not to admit expert testimony. *State v. Corpier,* 793 S.W.2d 430, 441[32–34] (Mo.App.1990). The trial court has abused its discretion only when the ruling is "clearly against the logic of the circumstances or when it is arbitrary and unreasonable." *Id.* In the instant case, the trial court did not abuse its discretion. The expert was allowed to testify that a relationship does exist between alcoholism and brain impairment. The court

limited his testimony when it perceived the questions were outside the expert's field of knowledge. Restricting an expert's testimony to the scope of the expert's knowledge is not an abuse of the court's discretion.

Further, the court's action did not have a determinative effect on the outcome of the trial. The expert in question was allowed to testify to the possible relationship between alcoholism and brain impairment. Numerous other experts testified for well over one hundred pages of transcript that Defendant had a brain impairment and suffered from a mental disease or defect. Point denied.

In Defendant's fifth point, he submits the trial court erred in overruling Defendant's motions for an acquittal. Defendant argues that there was insufficient evidence to support the convictions in that there was no evidence to support the element of deliberation in the murder charge and no evidence to support the element of attempted forcible penetration in the attempted rape charge. This contention is completely without merit.

■ The deliberation required to support a conviction for first-degree murder may be inferred from the circumstances surrounding the homicide. *State v. Grubbs,* 724 S.W.2d 494, 498[3] (Mo. banc 1987), *cert. denied,* 482 U.S. 931, 107 S.Ct. 3220, 96 L.Ed.2d 707 (1987). Deliberation occurs when the defendant considers the matter of taking another's life "with a cool and deliberate state of mind." *Id.* It is not necessary that the defendant brood over his actions for any appreciable period of time. *Id.*

■ In this case, there was clearly sufficient evidence of Defendant's deliberation to convict him of first-degree murder. In his confession, Defendant stated he knocked victim down and then hit her several times. He began choking her and then paused. When she screamed, he began choking her again. The jury could easily have inferred that Defendant deliberated during this pause.

■ There was also sufficient evidence to support Defendant's conviction of attempted rape. The victim was found only partially clothed. A medical examination of victim showed that she had sustained tears to the lining of the interior of the vagina. Expert testimony indicated that these tears were consistent with forcible penile penetration. Further, blood stains matching Victim's blood were found on the shirt Defendant had worn to work that day. Point denied.

■ Defendant next contends the trial court erred both in permitting introduction of evidence that Victim was a peaceful person and in submitting instructions which included the issue of self-defense. Defendant argues that the instructions were not supported by the evidence and were prejudicial in that Defendant was not proceeding on the basis of self-defense.

Defendant offers nothing in support of his argument that the State should not have been able to present evidence of Victim's peaceful character except that the admission of such evidence was prejudicial. However, the State was justified in its presentation of this evidence. In his confession, Defendant attempted to portray Victim as a violent person, saying that she hit him first and jumped on his back when he was trying to leave her office. Thus the prosecutor's questioning of those witnesses who knew Victim was merely in response to Defendant's statements. Further, the State did not dwell on this aspect of these witnesses' testimony, merely asking whether Victim was a peaceful person, and then leaving the subject.

Defendant's contention that the self-defense instruction was erroneous and prejudicial is also incorrect. When Defendant objected to character evidence of the Victim being introduced on the grounds that this was not a self-defense case, the trial court stated:

I think by the nature of the defendant's statement he chose his words, and I think he did attack the character of the victim by the language he gave in the statement and as a result, I think the state can in its case in chief prepare

against the possibility of a self-defense issue being raised more directly by the defendant in his case in chief.

At the instructions conference, the court overruled Defendant's objections to the submission of the self-defense instruction.

■ The trial court was correct in its interpretation of the law. Contrary to Defendant's assertion, a defendant has no burden on the issue of self-defense. Once the issue of self-defense has been raised, from whatever source, the burden rests on the State as an element of conviction to prove beyond a reasonable doubt that the homicide was not justified. *State v. Isom*, 660 S.W.2d 739, 742[6, 7] (Mo.App.1983). Thus it was not error for the trial court to submit the self-defense instruction over Defendant's objections. Where the evidence conflicts, it is a question of fact for the jury to determine whether the accused acted in self-defense. *State v. Chambers*, 671 S.W.2d 781, 782 (Mo. banc 1984). Point denied.

In Defendant's seventh point, he alleges the trial court erred in submitting the reasonable doubt instruction, MAI–CR3d 302.-04. He submits that the use in the instruction of the phrase "firmly convinced" of Defendant's guilt in defining "reasonable doubt" unconstitutionally lowered the State's burden of proof. Defendant requests that his case be reversed or transferred to the Missouri Supreme Court for a re-examination of the law in light of the recent United States Supreme Court case, *Cage v. Louisiana*, —— U.S. ——, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990). This issue has been raised in numerous cases. *Cage v. Louisiana* did not change Missouri law. *See State v. Antwine*, 743 S.W.2d 51, 62–63[12] (Mo. banc 1987), *cert. denied*, 486 U.S. 1017, 108 S.Ct. 1755, 100 L.Ed.2d 217 (1988); *State v. Tramble*, 813 S.W.2d 83, 85[5] (Mo.App.1991). Point denied.

Defendant next suggests the trial court erred in failing to submit Defendant's requested instruction for felony murder. Defendant contends that because there was evidence to support a conviction for this offense, it was prejudicial error not to give the instruction.

■ It is true that the trial court is required to submit an instruction for an included offense when there is a basis for a verdict acquitting the defendant of the offense charged and convicting him of the included offense. § 556.046.2, RSMo 1986; *State v. Six*, 805 S.W.2d 159, 164[1] (Mo. banc 1991). However, Defendant has suffered no prejudice. "The appropriate MAI–CR3d requires that the jury find the defendant not guilty of first degree murder and then conventional second degree murder before it may consider second degree felony murder." *Id.* at [2] (citations omitted). The trial court submitted a conventional second degree murder instruction. Defendant was not prejudiced by the absence of the second degree felony murder instruction because the jury failed to find second-degree murder. *Id.*

Defendant also contends the Rule 29.15 motion court erred in failing to grant post-conviction relief, without holding an evidentiary hearing, because Defendant received ineffective assistance of counsel. Defendant argues that counsel did not have sufficient time to adequately prepare the case, failed to present psychiatric evidence at the suppression hearing to challenge the voluntariness of Defendant's statement to the police, and erred in mentioning a prior crime committed by Defendant.

■ In order for a movant in a Rule 29.15 proceeding to be entitled to an evidentiary hearing, he must cite facts, not conclusions, which if true would entitle him to relief, the allegations of fact must not be refuted by the record, and the matters complained of must have resulted in prejudice to movant's defense. *Fairley v. State*, 770 S.W.2d 458, 459 (Mo.App.1989).

■ In order to establish ineffective assistance of counsel, Defendant must show that his trial counsel did not exhibit the customary skill and diligence exercised by a reasonably competent attorney under similar circumstances, and that there is a reasonable probability that, but for the attorney's unprofessional errors, the result of the proceeding would have been different. *Sloan v. State*, 779 S.W.2d 580, 582[2] (Mo. banc 1989), *cert. denied*, 494 U.S.

1060, 110 S.Ct. 1537, 108 L.Ed.2d 776 (1990). The presumption is that trial counsel is competent. *Id.*

The motion court made the following finding regarding Defendant's claim that his counsel did not have sufficient time to adequately prepare his case:

> The trial transcript reflects careful, efficient, skillful representation by defense counsel, and not evidence of restrictive witnesses presentation or lack of time to prepare as claimed in paragraph 9(c) of the *pro-se* motion.

> \*　　\*　　\*　　\*　　\*　　\*

> Trial counsel's representation as reflected by the record shows skillful and aggressive representation.

The motion court's finding was not clearly erroneous. A review of the trial proceedings demonstrates that Defendant's counsel aggressively represented Defendant throughout the pre-trial matters, voir dire, the trial, and the punishment phase of the trial. Defendant was not entitled to an evidentiary hearing on this claim, because the record refutes Defendant's allegation.

The motion court's finding as to Defendant's second claim of ineffective assistance of counsel, that counsel failed to present psychiatric evidence at the suppression hearing to challenge the voluntariness of Defendant's confession, is as follows:

> ... [T]he transcript is devoid of facts and the testimony of mental experts that the defendant could not know, appreciate or understand his *Miranda* rights; there are no facts alleged that there is a nexus between the Defendant's alleged impairment and a free and knowing waiver. The ability to find an expert to establish such nexus is at best speculative.

> \*　　\*　　\*　　\*　　\*　　\*

> Counsel's failure to have an expert testify on the specific issue of voluntariness was a matter of trial strategy and trial technique and insufficient to raise a claim of ineffective assistance of counsel.

Here again, the motion court was not clearly erroneous. The trial testimony of Defendant's expert witnesses concerning

his alleged mental impairment is extensive. That testimony does not contain any assertions that Defendant was unable to make a voluntary waiver. Defendant's Rule 29.15 motion asserts the conclusion that Defendant could not make such a waiver, but does not assert that Defendant had located medical experts who would have testified to this. Instead, Defendant's motion states: "An expert witness *could* have testified.... A medical expert *could* have been located through investigation ..." Defendant's motion did not assert that such testimony would actually have been forthcoming, and thus the motion did not state a fact which, if true would have entitled him to relief. Further, Defendant therefore was not entitled to an evidentiary hearing on this contention.

Defendant's third allegation of ineffective assistance of counsel involved counsel's statement at trial concerning a prior crime committed by Defendant. During voir dire, defense counsel informed the jury panel that Defendant had been convicted of driving while intoxicated. Counsel raised the subject to discover whether this would influence the jury panel should Defendant testify. The motion court's finding that this was trial strategy was not clearly erroneous. Further, this allegation does not entitle Defendant to an evidentiary hearing. Defendant was not prejudiced by this reference, given the overwhelming evidence of his guilt. *State v. Baker*, 741 S.W.2d 63, 66–67 [6, 7] (Mo.App.1987). Point denied.

■ Finally, Defendant asserts the motion court erred in finding Defendant was not sentenced in excess of the statutory maximum. Defendant contends he was incorrectly sentenced under § 566.030.2, RSMo 1986, for the unclassified offense of attempted forcible rape. Defendant submits he should have been sentenced under § 558.011(1) for the Class A felony of attempted forcible rape.

Section 566.030.2 states:

Forcible rape or an attempt to commit forcible rape as described in subsection 1 of this section or rape as described in subsection 3 of this section is a felony for which the authorized term of imprisonment, including both prison and conditional terms, is life imprisonment or a term of years not less than five years, unless in the course thereof the actor inflicts serious physical injury on any person, displays a deadly weapon or dangerous instrument in a threatening manner or subjects the victim to sexual intercourse or deviate sexual intercourse with more than one person, in which cases forcible rape or an attempt to commit forcible rape is a class A felony.

Defendant argues that because the indictment charges Defendant with a Class A felony, and because evidence was adduced at trial showing that serious physical injury was inflicted on Victim, that the offense was a Class A felony. Under § 558.011(1), the authorized maximum sentence would be life imprisonment.

Count III of the indictment does state that Defendant was charged with the Class A felony of attempted rape. However, the relevant portion of the attempted rape instruction given to the jury states:

[I]f you find and believe from the evidence beyond a reasonable doubt:

First, that ... the defendant removed the clothes and undergarments of [Victim] and attempted to insert his penis in her vagina thereby causing vaginal tears, and

Second, that such conduct was a substantial step toward the commission of the offense of forcible rape, and

Third, that defendant engaged in such conduct for the purpose of committing such forcible rape, then you will find the defendant guilty under Count II of an attempt to commit forcible rape.

No mention is made anywhere in the jury instruction that this charge of attempted rape was a Class A felony. More importantly, the instruction does not contain as an element the infliction of serious physical injury, the display of a deadly weapon or a dangerous instrument in a threatening manner, the subjection of the victim to sexual intercourse with more than one person, or the subjection of the victim to deviate sexual intercourse with more than one

person. For Defendant to have been convicted of the Class A felony of attempted rape, the jury would have had to find that one of these alternatives took place.

■ Although Defendant's contention that he should have been sentenced for the Class A felony is incorrect, it is true that he was sentenced in excess of the statutory maximum. The maximum sentence authorized for forcible rape or an attempt to commit forcible rape under § 566.030 is life imprisonment. *State v. Charron,* 743 S.W.2d 436, 438[3, 4] (Mo.App.1987); *Toney v. State,* 770 S.W.2d 411, 414[5] (Mo.App. 1989). The motion court therefore erred in finding that Defendant's sentence was not in excess of the statutory maximum. We remand this issue to the motion court for resentencing within the limits provided by the statute.

Affirmed in part and reversed and remanded in part.

PUDLOWSKI, P.J., and STEPHAN, J., concur.