STATE of Missouri, Respondent,

v.

Roland R. STOER, Appellant.

Roland R. STOER, Appellant,

v.

STATE of Missouri, Respondent.

Nos. 17206, 18500.

Missouri Court of Appeals,
Southern District,
Division 1.

Sept. 1, 1993.

Request for Rehearing and/or Request for
Transfer to
Supreme Court Denied Sept. 22, 1993.

Application to Transfer Denied
Oct. 26, 1993.

**350**

Ellen H. Flottman, Office of the State Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Millie Aulbur, Asst. Atty. Gen., Jefferson City, for respondent.

## PER CURIAM.

A jury found Defendant guilty of burglary in the first degree, § 569.160[1] (Count I), robbery in the first degree, § 569.020 (Count II), assault in the second degree, § 565.060 (Count III), armed criminal action, § 571.015 (Count IV), and felony resisting arrest, § 575.150 (Count V). He was sentenced as a prior offender to imprisonment as follows: fifteen years on Count I, thirty years on Count II, seven years on Count III, one hundred years on Count IV, and five years on Count V. The sentences were ordered to "run consecutive to each other." Defendant appeals in No. 17206.

After the trial, Defendant filed a motion for postconviction relief under Rule 29.15. The motion was denied after an evidentiary hearing. From that denial, Defendant appeals in No. 18500. We have consolidated the appeals, which will be dealt with separately.

### No. 17206

In this appeal, Defendant claims the trial court erred in (1) submitting the verdict director on resisting arrest, (2) failing to sever Counts I and II from the remaining counts, and (3) submitting the instruction defining reasonable doubt.

The evidence favorable to the verdict follows. On February 6, 1989, Defendant escaped from the Fordland Honor Camp, a facility of the Missouri Department of Corrections, where he was incarcerated for beat-ing his parents to death. About 2:00 p.m. that day Defendant knocked on the apartment door of Daphne Bolton in Springfield, Missouri. After she answered the door, Defendant pushed his way inside and demanded she give him her car keys and money. Bolton complied and Defendant was given $30 in cash. Defendant pushed her into the kitchen and struck her on the head. He then pushed her down the hallway into a bedroom where he tied her to the bed. After doing so, Defendant struck her on the back of the head five or six more times. When Bolton heard Defendant leave, she untied herself, called the police and reported her 1984 Chrysler missing.

Bolton was taken to the hospital for treatment of four or five head wounds which required numerous stitches to close. She testified her head hurt and the wounds bothered her for about a week.

About 3:00 p.m. the same day, Officer Bruce Waterman of the Springfield Police Department saw Defendant driving the car reported stolen from Ms. Bolton. He activated his red lights and siren and pursued Defendant, who refused to stop. The chase ended when Defendant struck a boat in a residential driveway. Officer Waterman drew his pistol and told Defendant he was under arrest for burglary and robbery. Defendant ran from the scene with Officer Waterman in pursuit. The officer reholstered his weapon during the foot chase and at one point tried to grab Defendant. Wildly swinging his fists, Defendant broke away and continued running. Finally, when Defendant fell trying to climb a fence, the officer caught him. A struggle ensued and Defendant grabbed the officer's pistol which was variously pointed at both combatants during the encounter. Defendant's efforts failed and he was eventually subdued. At trial, Defendant presented no evidence.

Defendant's first point alleges the trial court erred in submitting Instruction No. 14, patterned after the two instructions under MAI–CR 3d 329.60. Defendant claims the instruction violated his rights to due process

---

**1.** Statutory references are to RSMo 1986, and rule references are to Missouri Rules of Court (1993), unless otherwise indicated.

and a fair trial because the jury was instructed on both resisting arrest by fleeing (a class A misdemeanor) and resisting arrest by using or threatening to use violence or physical force (a class D felony).

Instruction No. 14 reads:

As to Count V, if you find and believe from the evidence beyond a reasonable doubt:

First, that on or about February 6, 1989, in the County of Greene, State of Missouri, Bruce Waterman was a law enforcement officer, and

Second, that Bruce Waterman was making an arrest of the defendant for burglary, and

Third, that defendant knew that a law enforcement officer was making an arrest of defendant, and

Fourth, that for the purpose of preventing the officer from making the arrest, the defendant resisted the arrest by fleeing from the officer and by using or threatening to use violence or physical force,

then you will find the defendant guilty under Count V of resisting arrest.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

■ Under § 575.150 a person commits the crime of resisting arrest "if, knowing that a law enforcement officer is making an arrest, for the purpose of preventing the officer from effecting the arrest, he: (1) Resists the arrest of himself by using or threatening the use of violence or physical force or by fleeing from such officer...." The statute also states, "Resisting, by means other than flight, ... an arrest for a felony is a class D felony; otherwise, resisting ... arrest is a class A misdemeanor." Therefore, resisting arrest for a felony is only a felony if the resistance is accomplished by a means other than flight. *State v. Johnson,* 830 S.W.2d 36, 38 (Mo.App.1992).

The Notes on Use to MAI–CR 3d 329.60 instruct that:

Resisting one's own arrest by fleeing from an arresting law enforcement officer

is a class A misdemeanor, whether the arrest is for a felony or not, and is submitted by using MAI–CR 3d 329.60.1.

Resisting or interfering with an arrest as submitted by MAI–CR [3d] 329.60.2 can be either a class D felony or a class A misdemeanor.

Here, the State obviously combined MAI–CR 3d 329.60.1 and 329.60.2 to instruct the jury on both fleeing and the use of violence or force.

Rule 28.02(f) states: "The giving or failure to give an instruction or verdict form in violation of this rule or any applicable Notes on Use shall constitute error, its prejudicial effect to be judicially determined." However, "[e]rror standing alone ... is not sufficient to overturn the jury's determination of guilt. There must be a showing of prejudice to the appellant as a result of the error before there are grounds to upset the verdict." *State v. Gilmore,* 797 S.W.2d 802, 805 (Mo.App.1990). "Prejudice, as that term is used in connection with erroneous jury instructions, is defined as the potential for misleading or confusing the jury." *State v. Green,* 812 S.W.2d 779, 787 (Mo.App.1991).

■ Defendant claims he was prejudiced because the jury could have found that he resisted arrest by fleeing and reached a guilty verdict under Instruction No. 14. Defendant misreads the instruction. As submitted, the instruction allowed a guilty verdict only if the jury found Defendant resisted arrest by fleeing *and* by using or threatening to use violence or physical force. Clearly, the instruction placed a greater burden than necessary on the State by adding the requirement of flight. "A criminal jury instruction that puts an additional burden on the state beyond that which is legally required in order to establish guilt, is not prejudicial to the defendant." *State v. Livingston,* 801 S.W.2d 344, 350 (Mo. banc 1990).

Instruction No. 14 was not the proper instruction, but the deviation from the Notes on Use was not prejudicial and is not a basis for reversal. The instruction was not misleading or confusing to the jury because the evidence revealed Defendant's flight, violence and physical force. Without question, the

instruction required the State to establish all the elements of felony resisting arrest. Point I is denied.

In his point II, Defendant alleges the trial court abused its discretion in denying Defendant's motion for severance which sought to sever the trial of the burglary and robbery counts from the remaining counts. Defendant argues the counts involving Ms. Bolton (Counts I and II) were totally separate crimes from those involving Officer Waterman (Counts III, IV and V), and he was substantially prejudiced when all the counts were tried together.

Resolving this contention requires a two-step analysis. "First is whether the offenses were properly joined in the indictment. If joinder was proper then it is necessary to determine whether the trial court abused its discretion in refusing to sever." *State v. Hughes,* 787 S.W.2d 802, 804 (Mo. App.1990). Joinder is either proper or improper under the law while severance is discretionary. *State v. Smith,* 682 S.W.2d 861, 863 (Mo.App.1984).

Joinder is governed by § 545.140.2 and Rule 23.05. Both provide, in pertinent part, joinder of two or more offenses that constitute parts of a common scheme or plan is proper. To find a common scheme or plan the offenses charged must be the product of a single or continuing motive. *State v. Morant,* 758 S.W.2d 110, 114 (Mo.App.1988). Here, Defendant's offenses were all part of his plan to escape from the Fordland Honor Camp, evade police and flee from the area. *See State v. White,* 857 S.W.2d 344, 348 (Mo. App.E.D.1993). In order to successfully escape, Defendant needed a car and money. He obtained both from the burglary and robbery of Ms. Bolton. In fleeing from the area, it was also necessary to evade the police. As Defendant drove the stolen vehicle, Officer Waterman alertly spotted him and gave chase. Defendant's remaining criminal acts resulted from his apprehension while he pursued his plan to escape. On similar facts, a common scheme or plan was found to uphold joinder in *State v. Foerstel,* 674 S.W.2d 583 (Mo.App.1984), and *State v. White, supra.* We find joinder was proper.

The next question is whether the trial court abused its discretion in not severing the offenses as proposed by Defendant. To prevail on his motion to sever, Defendant is required to make a particularized showing of substantial prejudice, § 545.885.2, RSMo Supp.1992, and Rule 24.07, and an abuse of discretion by the trial court. *Hughes,* 787 S.W.2d at 804. Substantial prejudice is defined by § 545.885.2 as "a bias or discrimination against the defendant or the state which is actually existing or real and not one which is merely imaginary, illusionary or nominal."

In assessing prejudice, the court should consider, among other relevant factors, the number of offenses charged, the complexity of the evidence to be offered and whether the trier of fact is able to distinguish the evidence and apply the law intelligently to each offense. *State v. Clark,* 729 S.W.2d 579, 583 (Mo.App.1987). Here, there are only five counts arising from two incidents. The relevant evidence to each incident is distinct and not complex. The State's evidence essentially came from the testimony of the two victims. In contrast, in *State v. Sims,* 764 S.W.2d 692, 697 (Mo.App.1988), the trial court's denial of defendant's request to sever was upheld where defendant was charged with ten counts of robbery and attempted robbery and ten counts of armed criminal action arising from ten incidents.

Defendant argues substantial prejudice resulted because the jury could have taken evidence of one set of charges as establishing the other set of charges. The trial court read the jury MAI–CR 3d 304.12 instructing them to consider each offense separately. Nothing in the record suggests the jury ignored this instruction or that the jury was unable to distinguish the evidence and apply the law to each offense. We fail to see how the jury could believe Defendant's assault of Officer Waterman or Defendant's resistance to arrest would tend to establish his crimes against Ms. Bolton or vice versa. Defendant has failed to show either substantial prejudice or an abuse of discretion. Point II lacks merit.

Defendant's third point is that the trial court erred in giving Instruction No. 4, based on MAI–CR 3d 302.04, in that the instruction

erroneously defined "reasonable doubt." In *State v. Blankenship,* 830 S.W.2d 1, 13 (Mo. banc 1992), the Court rejected the same contention and said that the instruction has been repeatedly upheld. This point has no merit.

### No. 18500

In his single point on this appeal, Defendant alleges the motion court erred in denying his Rule 29.15 motion because he was denied his rights to due process, equal protection, and to be free from cruel and unusual punishment guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Article I, §§ 2, 10 and 21 of the Missouri Constitution, in that:

(a) His "sentence of one hundred (100) years for armed criminal action was unconstitutional in that it exceeded a life sentence and was extreme and grossly disproportionate to the crime."

(b) "Section 571.015 is unconstitutional in that it states that a person who commits another felony in the proscribed manner 'is also guilty' of armed criminal action, which language serves to remove all prosecutorial discretion."

(c) "Sentencing appellant as a prior offender further subjected appellant to double jeopardy."

■ The standard of review for a Rule 29.15 proceeding is limited to a determination of whether the findings and conclusions of the motion court are clearly erroneous. Rule 29.15(j); *Avery v. State,* 770 S.W.2d 440, 441 (Mo.App.1989). The findings and conclusions are clearly erroneous only if, after a review of the entire record, the appellate court is left with a definite and firm impression that a mistake has been made. *Day v. State,* 770 S.W.2d 692, 695–96 (Mo. banc 1989), *cert. denied,* 493 U.S. 866, 110 S.Ct. 186, 107 L.Ed.2d 141 (1989).

■ Defendant presents a long and convoluted argument regarding prong (a) of this point. As we understand it, Defendant claims his sentence of one hundred years under the armed criminal action statute exceeds the statutory maximum and as a result, he was subjected to cruel and unusual punishment. He further argues such sentence is disproportionate to the underlying felony of assault in the second degree. We disagree.

Section 571.015.1 provides, in pertinent part:

> [A]ny person who commits any felony under the laws of this state by, with, or through the use, assistance, or aid of a dangerous instrument or deadly weapon is also guilty of the crime of armed criminal action and, upon conviction, shall be punished by imprisonment by the department of corrections and human resources for a term of not less than three years.

Defendant correctly observes the punishment provision sets forth no upper limit. He asserts the appellate courts have construed the range of punishment under this statute to be from three years to life imprisonment. We discuss those cases cited by him.

In *State v. Kirksey,* 647 S.W.2d 799 (Mo. banc 1983), the Supreme Court noted defendant was sentenced to five years for aiding escape and life imprisonment for armed criminal action. By way of dicta, the Court said, "These were the respective maximums prescribed by statute." *Id.* at 801. In *State v. Thomson,* 705 S.W.2d 38, 42 (Mo.App. 1985), the Court said the range of punishment for armed criminal action is three years to life; and in *State v. Freeman,* 702 S.W.2d 869, 874 (Mo.App.1985), we said life imprisonment is an authorized punishment for armed criminal action, *citing* to *Kirksey.* In *Thurston v. State,* 791 S.W.2d 893, 895 (Mo. App.1990), the Court construed the range of punishment allowed by the armed criminal action statute and held, "The absence of a stated maximum penalty merely indicates a legislative intent that a defendant convicted of that offense may be sentenced to any term of years above the minimum, including life imprisonment." The Court then cited *Kirksey, Thomson,* and *Freeman.* However, none of these cases involve a one hundred year sentence for armed criminal action, and none hold such a sentence is unauthorized by § 571.015.1.

This Court, in *State v. LaRue,* 811 S.W.2d 40, 46 (Mo.App.1991), *citing* to *Thurston,* said, "The absence of a stated maximum penalty for armed criminal action indicates a

legislative intent that an accused convicted of such crime may be sentenced to any term of years (not fewer than three) up to life imprisonment." As *Thurston* construes the maximum penalty under the armed criminal action statute, a sentence of one hundred years is permissible, and our holding in *LaRue* is not inconsistent with that view.

A statute which fixes a minimum punishment but provides no maximum term is neither constitutionally invalid nor void because of indefiniteness. Such statutes leave the imposition of a sentence greater than the prescribed minimum to the trial court, subject to the constraints of the Eighth Amendment.

*Mannon v. State,* 788 S.W.2d 315, 322 (Mo. App.1990) (citations omitted). Therefore, we hold that Defendant's one hundred year sentence for armed criminal action does not exceed the statutory maximum penalty.

We are mindful of Defendant's reliance on *State v. Williams,* 828 S.W.2d 894, 903 (Mo. App.1992), where the Court held defendant's one hundred year sentence for attempted rape under § 566.030 was in excess of the statutory maximum of life imprisonment. We are not swayed by *Williams* because the armed criminal action statute was not involved and the cases relied upon by *Williams* do not involve a one hundred year sentence.

■ Furthermore, Defendant's sentence did not subject him to cruel and unusual punishment. In *State v. Bell,* 719 S.W.2d 763 (Mo. banc 1986), the Supreme Court said that "punishment within statutory limits is not cruel and unusual because of its duration unless it is so disproportionate to the offense committed as to shock the moral sense of reasonable people." *Id.* at 766. In ruling defendant's proportionality claim, the Supreme Court was guided by *Solem v. Helm,* 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983). *Solem* has been overruled as we will later discuss. Therefore, we place no significance on the phrase "unless it is so disproportionate...." Prior to *Bell* and *Solem,* the Missouri Supreme Court had determined "punishment within statutory limits cannot as a matter of law be held cruel and unusual when the statute authorizing the punishment

is not invalid." *State v. Repp,* 603 S.W.2d 569, 571 (Mo. banc 1980).

Defendant also claims his punishment was not proportionate to his crime and, therefore, violated his Eighth Amendment protection against cruel and unusual punishment. He strongly relies on *Solem,* which held that the final clause of the Eighth Amendment prohibits not only barbaric punishments but also sentences that are disproportionate to the crime committed. His reliance is misplaced because *Solem* was expressly overruled in *Harmelin v. Michigan,* —— U.S. ——, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991). The United States Supreme Court said that "*Solem* was simply wrong; the Eighth Amendment contains no proportionality guarantee." —— U.S. at ——, 111 S.Ct. at 2686. This holding was in view of a noncapital case where the defendant was convicted of possessing 672 grams of cocaine and sentenced to a mandatory term of life imprisonment without possibility of parole. At least in a theoretical sense, that sentence is more severe than the sentence here. We determine that the motion court's findings and conclusions on prong (a) were not clearly erroneous.

■ Prongs (b) and (c) were not raised in Defendant's postconviction motion nor presented to the motion court. Issues not raised by a Rule 29.15 motion nor presented to the motion court for determination will not be considered on appeal. *Lawrence v. State,* 831 S.W.2d 772, 773 (Mo.App.1992); *Myers v. State,* 815 S.W.2d 472, 473 (Mo.App.1991). The only grounds for relief that may be considered on appeal are those that were before the motion court. *Lawrence* at 773.

■ After Defendant's counsel filed his brief we granted Defendant permission to file his pro se brief. Upon carefully reviewing Defendant's pro se brief containing seven points relied on (actually six because the brief contains no point V), we find that points III, IV and VI are simply a rehash of Defendant's point in his postconviction appeal. Furthermore, all of Defendant's points disregard the mandatory requirements of Rule 30.06(d). This rule requires a point relied on to set forth "wherein and why" the trial court erred. An explanation for this requirement

is found in the leading case of *Thummel v. King,* 570 S.W.2d 679, 684–87 (Mo.1978). A point relied on, after identifying the alleged erroneous ruling of the trial court, must specify why the ruling was erroneous. *Id.* This requirement contemplates a statement which ordinarily will closely approximate what the appellant believes should have been the trial court's conclusion of law on the point being addressed. *Id.* After stating why the ruling was erroneous, the point must then explain wherein the testimony or evidence gives rise to the ruling for which the appellant contends. *Id.*[2] "[T]his court has no duty to resort to the argument section of the brief to ascertain 'wherein and why' movant is claiming the court erred." *Turner v. State,* 669 S.W.2d 642, 644 (Mo.App.1984). As a result, Defendant's points present nothing for review. *Tate v. State,* 773 S.W.2d 190, 192 (Mo.App.1989).

Both judgments are affirmed.

---

**2.** *Thummel v. King* discusses Rule 84.04(d) which is the same as 30.06(d).