**STATE of Missouri, Respondent,**

v.

**Terrance BOLDS, Appellant.**

**No. ED 75483.**

Missouri Court of Appeals,
Eastern District,
Division One.

Nov. 23, 1999.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 7, 2000.

Gwenda R. Robinson, Asst. Public Defender, St. Louis, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Stacy L. Anderson, Asst. Atty. Gen., Jefferson City, for respondent.

GARY M. GAERTNER, Presiding Judge.

Appellant, Terrance Bolds ("defendant"), appeals the judgment of the Circuit Court of the City of St. Louis, after a jury convicted him of five counts of forcible sodomy, section 566.060, RSMo 1994,[1] two counts of forcible rape, section 566.030, four counts of armed criminal action, section 571.015, four counts of first degree burglary, section 569.160, one count of first degree robbery, section 569.020, and one count of first degree assault, section 565.050. The court sentenced defendant to consecutive terms of 101 years of imprisonment for each count of sodomy, rape, and for three counts of armed criminal action. In addition, defendant was sentenced to 151 years of imprisonment for the remaining count of armed criminal action. Defendant was further sentenced to 15 years of imprisonment for each count of burglary and assault, and 30 years of imprisonment for robbery, to be served consecutively with each other and other counts. We affirm.

The sufficiency of the evidence to sustain the defendant's convictions is not in dispute. Defendant was involved in the following incidents, which occurred in the summer of 1997.

The first incident occurred on August 21, 1997, around 6:20 a.m. Defendant entered P.M.'s house with a revolver. P.M., who was two months pregnant at the time of the incident, lived with her three-year-old son. Defendant instructed P.M. not to scream and directed her to the living room. Defendant forced the victim to undress and perform oral sex on him, while

---

**1.** All statutory references are to RSMo 1994, unless otherwise indicated.

pointing the gun at her. Before leaving, defendant told victim, "You better not call the police or I will come back and kill you and your son." Afterwards, defendant took P.M.'s television, car keys, a diskette with her son's photo on it, Rolodex, ATM card, credit card and a receipt from a doctor's visit.

Two days later, on August 23, 1997, defendant assaulted J.J. Defendant entered J.J.'s apartment through a window in her four-year-old son's bedroom around 4:00 a.m. Defendant forced the victim, under gunpoint, to undress and to put on a compact disc and dance for him. Shortly after that, defendant forced the victim to perform oral sex on him. Defendant raped her vaginally and anally, had her perform oral sex on him again and raped her vaginally and anally a second time. Afterwards, defendant tied J.J. up in the bathtub, bound her wrists together, placed her facedown in the tub, and bound her ankles to her wrists. A while later, defendant put an egg in J.J.'s mouth, gagged her with a pair of her "biker pants," and left. Defendant also took J.J.'s Illinois identification card, a Victoria's Secret bag, an Adidas bag, and a Dooney–Burke bag.

Three days later, on August 26, 1997, defendant assaulted W.T. Inside the house, defendant took two rings from W.T.'s fingers at gunpoint. Defendant raped her several times, vaginally and anally. He also forced her to perform oral sex on him. Throughout the assault, defendant held a gun to W.T.'s head.

Three days later, on August 29, 1997, around 5:00 a.m. defendant assaulted R.F. Defendant entered R.F.'s bedroom with a gun in his right hand and wanted her to perform oral sex on him. When the victim did not cooperate, defendant forced his penis into her mouth. After defendant switched the gun from his right hand to the left hand, R.F. attempted to take the pistol from the defendant. A struggle ensued and defendant told her "Bitch, you are going to die now," and repeatedly hit and bit R.F. R.F. pulled off the defen-

dant's ski mask and got the pistol away from him. She tried to shoot defendant with the gun but the gun would not fire. Defendant took the pistol and told R.F. to turn around, that he was going to shoot her. The gun would not fire and he ran out of the house.

During the struggle, R.F. heard her ten-year-old son moving around and yelled at him to call the police because a stranger was in the house. Unfortunately, her son's phone was not working. After defendant ran out of the house, she called the police. While she was trying to call the police, defendant came back and tried to open her bedroom door. When he could not open the door, he fired two shots through the door. Bullet fragments hit R.F.'s thigh. She also had scratches on her face and hands and bite marks in five different places. Her car keys, water pitcher, and CDs were missing and the children's bedroom window was broken.

Defendant was charged by indictment with twenty-two counts for these offenses. The state noll prossed five counts and the jury found defendant guilty of the remaining seventeen counts. The trial court sentenced defendant to a total of 1266 years of imprisonment. Defendant appeals.

Defendant raises four points on appeal. Defendant argues that the trial court erred: 1) in failing to pronounce a sentence and render a judgment within the statutory limits prescribed for the offenses of forcible sodomy, forcible rape, and armed criminal action and therefore, subjected him to cruel and unusual punishment; 2) in permitting the prosecutor to elicit evidence of uncharged crimes and prior bad acts of the defendant during examination of Q. L.; 3) in permitting the prosecutor to argue in closing that the defendant was a "serial rapist" and "everyone's worst nightmare"; and 4) in overruling the defendant's motion to strike a juror for cause.

■ In his first point, defendant argues the trial court erred in failing to pronounce

a sentence and render a judgment within the statutory limits prescribed for the offenses of forcible sodomy, forcible rape, and armed criminal action and therefore, subjected him to cruel and unusual punishment. We disagree. Defendant's contention regarding his sentences is without merit because the sentences are within the statutory range of punishment for the convicted offenses and are not cruel and unusual.

■ The trial court has discretion when fixing sentences in the first instance and generally, the appellate court "will not review the trial court's sentence unless an abuse of discretion is shown by motive of partiality, prejudice or oppression, or is induced by corruption." *State v. Stout,* 960 S.W.2d 535, 536–37 (Mo.App. E.D. 1998). The authorized punishment for forcible sodomy and forcible rape, in which the perpetrator displays a deadly weapon, is "life imprisonment or a term of years not less than ten years." Sections 566.030.2 and 566.060.2. The authorized punishment for armed criminal action is for a term not less than three years. Section 571.015.1. These statutes state their minimum sentences but do not state their maximum sentences. In Missouri, "[t]he absence of a stated maximum penalty merely indicates a legislative intent that a defendant convicted of the offense may be sentenced to any term of years above the minimum, including life imprisonment." *Thurston v. State,* 791 S.W.2d 893, 895 (Mo.App. E.D.1990). Following this reasoning, Missouri appellate courts have upheld longer terms of imprisonment in the absence of a stated maximum penalty. *See e.g., State v. Norton,* 949 S.W.2d 672, 678 (Mo.App. W.D.1997) (75–year term of imprisonment for armed criminal action upheld); and *State v. Stoer,* 862 S.W.2d 348, 353–54 (Mo.App. S.D.1993) (100–year term of imprisonment for armed criminal action upheld). *See also, State v. Belcher,* 805 S.W.2d 245, 246 (Mo.App. S.D.1991) (400–year term of imprisonment for armed criminal action upheld).

In *Stoer,* the defendant argued that his sentence of 100 years for armed criminal action exceeded the statutory maximum and as a result, he was subjected to cruel and unusual punishment. *Stoer,* 862 S.W.2d at 353. He argued that the courts have construed the range of punishment under the armed criminal action statute to be three years to life imprisonment. *Id.* The court noted that the statute did not have a stated maximum penalty. *Id.* Thus, the court held that the defendant's 100 years did not exceed the statutory maximum. *Id.* at 354.

Similarly, in the present case, the crimes charged, forcible sodomy, forcible rape, and armed criminal action did not have stated maximum penalties. Defendant's 101 years and 151 years sentences are not less than three years (armed criminal action) and not less than ten years (forcible rape and sodomy). Thus, with the absence of a stated maximum penalty, defendant's sentences are within the statutory range of punishment for the offenses under the relevant statutes.

Defendant also argues that the trial court's sentences subjected him to cruel and unusual punishment because they were in excess of the statutory maximum. In *Stoer,* the court also held that defendant's 100–year sentence did not subject him to cruel and unusual punishment because the punishment was within the statutory limit. *Id.* at 354. Similarly, in our case, defendant was not subjected to cruel and unusual punishment because his sentences were within the statutory limits.

■ In his second point, defendant argues that the trial court plainly erred in permitting the prosecutor to elicit evidence of his uncharged crimes and prior bad acts during the prosecutor's examination of Q.L. Defendant concedes that this point was not preserved for appellate review but requests review under plain error.

Q.L. was defendant's former girlfriend and she leased an apartment where she had lived with defendant until May, 1996.

Q.L. was not aware that defendant had been living in the apartment during August, 1997, until the police contacted her for consent to search the apartment. The apartment was still maintained in her name after she moved out. The police seized several items from the apartment during their search. The prosecutor, during direct examination, questioned her about the property that was left behind in her apartment.

> Q. [Prosecutor] [Q.L.], what, if any, property did you see inside the apartment that was not there when you left?
>
> A. [Q.L.] There were a candy container that you would find at a convenience store like with taffy in it, candy in it. And there was one detective showed me there was a crack pipe on the bed. And basically that's what I remember that was there that was not supposed to be, besides the mess that was left.

On cross-examination by the defense counsel, Q.L. testified that the apartment lease was in her name. She testified that she left the apartment because she was scared to go back to the apartment. During redirect examination the prosecutor asked:

> Q. [Prosecutor] Why were you afraid to go back there?
>
> A. [Q.L.] Because I was scared of Terrance because –
>
> Q. [Prosecutor] Why were you scared of him?
>
> A. [Q.L.] Because he had – he used to hit me before and he did – basically he scared me. He would threaten me. I was pregnant when I left. I was about a month pregnant and his behavior was getting more and more violent whereas, you know, I had to leave because he would, you know, want to have sex all the time. And he also would leave, you know, late at night and then come back in the morning, by the time it was time to go to work. And sometimes he would come in the middle of the night and want to have sex and he'd leave and come back in the morning and he would

take my car, you know, and he would have my car and he would leave at night.

Defendant argues that Q.L.'s testimony "arguably constituted evidence of the uncharged crimes or prior bad acts of possession of crack cocaine, possession of drug paraphernalia, assault, tampering, and endangering the welfare of a child." Defendant argues that the above testimony were neither logically or legally relevant to the rape and sex-related offenses for which he was on trial and it was error for the trial court to have allowed the testimony. We disagree.

A defendant is entitled to plain error review if the defendant demonstrates that manifest injustice or a miscarriage of justice will occur unless the error is not corrected. *State v. Knese*, 985 S.W.2d 759, 770 (Mo.banc 1999). "Plain error rule is to be used sparingly and may not be used to justify a review of every point that has not been otherwise preserved for appellate review." *Id.* Generally, evidence of prior uncharged crimes and prior bad acts are inadmissible in a criminal prosecution for the purpose of showing the propensity of the defendant to commit such crimes. *State v. Cosby*, 976 S.W.2d 464, 468 (Mo. App. E.D.1998). "To violate the rule prohibiting evidence of other crimes or misconduct by the accused, the evidence must show the accused committed, was accused of, was convicted of, or was definitely associated with, the other crimes or misconduct." *State v. Ponder*, 950 S.W.2d 900, 911–12 (Mo.App. S.D.1997). Vague references are not characterized as clear evidence associating a defendant with other crimes. *State v. Rush*, 949 S.W.2d 251, 255 (Mo.App. S.D.1997). A trial court has a broad discretion to admit and exclude evidence at trial, and error will be found only if this discretion was clearly abused. *State v. Hall*, 982 S.W.2d 675, 680 (Mo. banc 1998).

In this case, we find that the trial court did not abuse its discretion by failing to intervene sua sponte in response to the alleged evidence of other crimes. Some of

the evidence adduced did not even connect defendant directly to the alleged crimes. For instance, Q.L. testified that the crack pipe found in the apartment she vacated did not belong to her. She did not testify that it belonged to the defendant, or that defendant was known to use crack cocaine. Defendant was not charged with possession of drug paraphernalia or drugs. Q.L. also testified that defendant used her car and not that he used the car without her consent. Thus, her testimony did not show that that defendant committed the crime of tampering as the defendant argues.

■ With regard to the testimony about defendant's assaultive behavior, we find that it was not improper for the trial court to allow such evidence because the defendant opened the door to the testimony. When a defendant injects an issue into a case, the state may offer, otherwise inadmissible evidence in order to explain or counteract a negative inference raised by the issue. *State v. Petty*, 967 S.W.2d 127, 143 (Mo.App. E.D.1998). Here, the defense, during cross-examination, injected the issue of why Q.L. left a leased apartment unattended. During redirect examination, Q.L. explained the reason why she left the apartment was because she was scared of the defendant's assaultive behavior.

■ The trial court did not abuse its discretion. Even if the evidence were evidence of other crimes and prior bad acts, manifest injustice or miscarriage of justice did not occur by their admissions in light of the overwhelming evidence of defendant's guilt.

■ Defendant in his third point argues the trial court plainly erred in permitting the prosecutor to argue in closing statements that he was a "serial rapist" and "everyone's worst nightmare." During closing remarks, the prosecutor argued:

[PROSECUTOR]: Terrence Bolds is a lot of things. Threatening, deadly, predatory, serial rapist. But most important what he is is [sic] a living nightmare. He's everyone's worst nightmare.

[DEFENSE COUNSEL]: Your Honor, I'll object to that.

THE COURT: Overruled.

[DEFENSE COUNSEL]: Make it a continuing objection.

THE COURT: Yes.

[PROSECUTOR]: When he came into [P.M.]'s house with this it was [P.M.]'s worst nightmare and probably anyone else. When he came into [J.J.]'s house with this over half of his face he was certainly [J.J.]'s worst nightmare. When he went into her refrigerator – think about that, took an egg out of this egg carton and jammed it in her mouth and tied her hands and feet like an animal for slaughter, he was that woman's worst nightmare. And, when he went to [R.F.]'s, broke into her baby's room, with glass, his fingerprints, and he fought with [R.F.] for this, you bet he was her worst nightmare. And, [W.T.], he raped and sodomized that woman so many times that he made her wash him with this towel. . . .

Defendant concedes that he did not preserve this error for appellate review because the claims were not included in his motion for a new trial, but requests plain error review.

■ We note plain error review is to be used sparingly and may not be used to justify a review of every point that has not been preserved for appellate review. *Knese*, 985 S.W.2d at 770. "Relief on an assertion of plain error in closing argument is granted only under extraordinary circumstances." *State v. Blackwell*, 978 S.W.2d 475, 479 (Mo.App. E.D.1998). In order to demonstrate error, the defendant must show that statements made in closing argument had a "decisive effect" on the jury. *Id.* "We will grant relief only if there is a reasonable probability that, in the absence of the statements, the verdict would have been different." *Id.*

In the present case, defendant was on trial for raping and sodomizing four different women. Prosecutor's comments, read in the context they were made, were not designed to instill fear on the jurors or to excite the passions of the jury against the defendant. Additionally, given that the victims identified defendant and testified at trial, there is no reasonable probability that the verdict would have been different in the absence of prosecutor's comments. Thus, the prosecutor's references to the defendant as a serial rapist and everyone's nightmares did not have a decisive effect on the jury. Moreover, there is no manifest injustice or miscarriage of justice present, in light of the overwhelming evidence of defendant's guilt.

In his final point, defendant argues that the trial court plainly erred in overruling his motion to strike juror J.H. for cause. Defendant concedes that this point was not preserved for appellate review, but respectfully requests this court to review the point under plain error.

We reiterate that plain error review is to be used sparingly and may not be used to justify a review of every point that has not been preserved for appellate review. *Knese*, 985 S.W.2d at 770. "The trial court has broad discretion in determining the qualifications of prospective jurors because it is in the best position to evaluate venirepersons' responses." *State v. Jones*, 979 S.W.2d 171, 184 (Mo.banc 1998). The trial court's ruling will not be disturbed unless it is clearly against the evidence and constitutes a clear abuse of discretion. *Id.* "Venirepersons may be excluded only where it appears that their views would prevent or substantially impair the performance of their duties as jurors in accordance with the instructions and their oath." *Id.*

In the present case, juror J.H. indicated during voir dire that he was a father of six daughters and that one of them was gang raped in 1971. J.H. responded during further examination that he would remain fair and impartial to the evidence presented. Afterwards, defense counsel moved to strike J.H. The trial court summoned J.H. to the bench and the following occurred:

THE COURT: We just wanted to know your feelings about the fact that one of your daughters was sexually attacked. We want to know if you could set it aside and be fair in this case, or is there anything about this case that makes you unfair to this man or the victims in the case.

[J.H.]: I'm sure I could be fair.

THE COURT: Do you think you could be fair?

[J.H.]: Yes, I think I could.

J.H. unequivocally stated that he would be fair and impartial. Defendant did not demonstrate that J.H.'s views would prevent or substantially impair him from performing his duties as a juror in accordance with the instructions and his oath. Thus, the trial court did not plainly err in not striking J.H. for cause.

Based on the foregoing, the judgment of the trial court is affirmed.

PAUL J. SIMON, J., and JAMES R. DOWD, J., concur.